# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5402 | **DATE** | 8/7/2000 |
| **CASE TITLE** | Quadro Enterprises, Inc. vs. Avery Dennison Corporation, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/14/2000 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment (Doc. 144-1) is granted with respect to Count I against Avery and granted in part and denied in part with respect to Count II against State Farm. Plaintiff's motion for summary judgment (doc. 135-1) is denied as against Avery and denied in part and granted in part as against State Farm.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | 4 | |
| ✓ | Notices mailed by judge's staff. | | AUG 8 2000 | |
| | Notified counsel by telephone. | | date docketed | 176 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 8/7/2000 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG -7 PM 4: 13 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUADRO ENTERPRISES, INC.,<br>an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVERY DENNISON CORPORATION, a<br>Delaware Corporation, and STATE FARM<br>INSURANCE, an Illinois Corporation,<br><br>Defendants.<br><br>AVERY DENNISON CORPORATION,<br>a Delaware Corporation,<br><br>Counter-Plaintiff,<br><br>v.<br><br>QUADRO ENTERPRISES, INC.,<br>an Illinois Corporation,<br><br>Counter-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 97 C 5402<br><br>Judge Rebecca R. Pallmeyer |

AUG 9 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Quadro Enterprises ("Quadro") creates and designs labels. Between 1992 and

1995, Defendant Avery Dennison Corp. ("Avery") printed labels using a design created by

Quadro, which Quadro then sold to Defendant State Farm Insurance ("State Farm"). The

business relationship between these three firms soured, and Avery began to produce the label

product and sell to State Farm through another distributor. Quadro has asserted five claims:

copyright infringement against Avery (Count I); (2) copyright infringement against State

Farm (Count II); breach of fiduciary duty against Avery (Count III); tortious interference with economic relations against Avery (Count IV); and tortious interference with economic relations against State Farm (Count V). Now before the court is (1) Plaintiff Quadro's motion for summary judgment against Defendants Avery and State Farm regarding validity and infringement (Counts I and II) and (2) Defendant State Farm's motion for summary judgment[1] on copyright invalidity (Counts I and II).[2] For the reasons that follow, the court grants in part and denies in part Plaintiff's motion for summary judgment and grants in part and denies in part Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Quadro is an Illinois corporation with its principal place of business in Westmont, Illinois. (Defendant State Farm's Statement of Material Facts ("State Farm's 56.1(a)(3) Stmt.") ¶ 1; Plaintiff's Local Rule 12(M) Statement of Material Facts In Support of Motion For Summary Judgment on Liability ("Quadro's 56.1(a)(3)")[3] ¶ 1.) Avery is a Delaware corporation with its principal place of business in Pasadena, California. (*Id.* ¶ 2.) State Farm

---

[1]    Defendant Avery joins in Defendant State Farm's motion for summary judgment.

[2]    Defendant Avery also moved for summary judgment on Counts III and IV. The court has addressed that summary judgment motion in a separate opinion issued on July 25, 2000.

[3]    The Local Rules have been renumbered, effective September 1, 1999, and the requirements of Local Rules 12(M) and 12(N) are now found in Local Rule 56.1. The renumbering did not alter the substance of the requirements. In the interest of clarity, Plaintiff Quadro's statement of material facts labeled "Local Rule 12(M) Statement", filed March 21, 2000, will be referred to as "Quadro's 56.1(a)(3) Stmt."

is an insurance company with its principal place of business in Bloomington, Illinois. (*Id.* ¶ 3.)

In late 1991, Quadro's President, Thomas R. Olson ("Olson"), approached State Farm with an idea for a name and address label sheet program to assist State Farm in marketing auto, life, and fire insurance. (State Farm's 56.1(a)(3) Stmt. ¶¶ 6, 7.) The name and address label program had two purposes, one promotional and one functional: (1) to disseminate goodwill advertising; and (2) to provide a quick reference to help customers reach their insurance agents. (*Id.* ¶ 8.) The name and address sheet consists of peel-off label stickers printed with the customers' return address and two business card label stickers printed with the insurance agent's name and address. (*Id.* ¶ 9.) The label sheets were typically requested by independent State Farm agents from State Farm. (*Id.*) The return address stickers were a gift to the customer, and the two business card labels were provided to the customer to place on a phone book and on car insurance documents for reference in case of an emergency. (*Id.*)

In early 1992, Quadro produced the first version of the label sheets in combination with manufacturer Wisconsin Label Corporation. (*Id.* ¶ 11.) Olson drafted the following instructional text which appeared at the bottom of the label page ("Text A"):[4]

---

[4] The court will use Plaintiff's characterization of Plaintiff's instructional text as "Text A," the instructional language printed on the seasonal labels as "Text A-1", and the instructional text printed on the return address labels as "Text A-2." Use of this nomenclature is purely in the interest of clarity, and is not to be interpreted as a conclusion that these versions of instructional text were derived from Plaintiff's instructional text.

> Use the above address labels with my compliments! Place one of my business cards on your phone book cover for easy reference. Put the other on your car insurance document in your glove box for ready reference in case of an emergency.

(*Id.* ¶ 10; Ex. B to Complaint ("Compl.").) Beginning in 1992, Quadro provided State Farm with the labels with this instruction already printed. State Farm would then print variable information (i.e. names and addresses) on the sheets and ultimately send those labels directly to the agents' customers. (*Id.* ¶ 10.) After a series of meetings beginning in August 1992 between Quadro and personnel from Avery, Avery replaced Wisconsin Label Corporation as the manufacturer of the name and address labels. (*Id.* ¶ 12.)

In March 1994, Quadro formalized its relationship with State Farm by entering into a contract with State Farm under which Quadro provided the name and address labels to State Farm beginning in March 1, 1994 and ending on March 1, 1996. (*Id.* ¶ 13.) On March 1, 1994, Quadro submitted an application to register "Integrated Text and Format of Imprintable Adhesive Backed Labels" to the United States Copyright Office. (*Id.* ¶ 14.) The application requested a copyright in the entire name and address label program. The Copyright Office rejected Quadro's application on the grounds that the labels product constituted an "idea, procedure, process, system, method of operation, concept, principle, or discovery." (*Id.*) On July 5, 1994, Quadro reapplied to the United States Copyright Office, seeking only to register the "instructional text" appearing at the bottom of the label sheet. (*Id.*) In the fall of 1994, the Copyright Office granted Quadro a Certificate of Registration for the instructional text with an effective date of registration of April 4, 1994 and

4

registration number TX 3-839-091. (*Id.* ¶ 16.)

In early 1996, State Farm invited several companies to bid on the address label business on which the Quadro contracts would expire in March and May of that year. (*Id.* ¶ 18.) State Farm claims that it put the contract up for competitive bidding because Quadro performed poorly under the contract. (*Id.*) State Farm ultimately selected Reign Forms and Graphics ("Reign") as its new label distributor. (*Id.* ¶ 20.) From March 1, 1996, until the present, State Farm has used Reign as its distributor for the return address label sheets. During this period, Reign has always used Avery as its manufacturer for such labels. (*Id.* ¶ 21.) On the bottom portion of the State Farm/Reign/Avery return address label sheets the following language appears ("Text A-2"):

> I hope you find these return address labels useful. Please accept them with my compliments. Place one of my business card labels on your phone book for quick and easy reference. Place the other on your insurance documents or folder.

(Ex. D to Compl.) Quadro claims that Defendants' use of this instructional language ("Text A-2") on the return address label sheets infringes its copyright.

State Farm also created several other label sheet distribution programs which were separate from the original return address label program. (State Farm's 56.1(a)(3) Stmt. ¶ 22.) In particular, State Farm initiated one such program called the "seasonal label" program in 1996 -- subsequent to the expiration of State Farm's contract with Quadro. This program was composed of customer return address labels with a spring/summer/fall/winter seasonal art work theme. The labels created as part of this program contained a greeting and instructional

text similar to that found in "Text A" and "Text A-2", referred to as "Text A-1" as follows:

> Use the above address labels with my compliments! Place one of my business card labels on your phone book for easy reference. Put the other on your car insurance document in your glove box for ready reference in case of emergency.

(Ex. C. to Compl.) Although the seasonal label sheets were manufactured by Avery, it is undisputed that Avery did not print any instructional language or artwork on the seasonal labels. (*Id.*) Avery manufactured and shipped blank label forms according to directions supplied by Reign, and the instructional language and artwork were later printed by Reign, in combination with Impressions Unlimited, an independent printing company. (*Id.* ¶ 23; *see also* Avery's 56.1 (b)(3)(B) Stmt. at ¶¶ 2, 3.) Quadro claims that Defendants' use of the instructional language ("Text A-1") on the seasonal labels also infringes its copyright.

On July 30, 1997, Plaintiff filed a three-count complaint seeking injunctive and compensatory relief against Defendants Avery and State Farm. The case was initially assigned to Judge James Moran of this court.[5] Plaintiff's complaint alleged copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, against Defendant Avery (Count I) and Defendant State Farm (Count II), and breach of fiduciary duty against Defendant Avery (Count III). Plaintiff subsequently amended its complaint, adding two counts for tortious interference with economic relations against both Avery and State Farm. (Count IV and Count V, respectively.) Now before the court is (1) Plaintiff Quadro's motion for summary

---

[5]     On October 26, 1998, the matter was reassigned to this court pursuant to an executive committee order. (Executive Committee Order, October 26, 1998, Docket # 72.)

judgment against Defendants Avery and State Farm (Counts I and II) and (2) Defendants State Farm's and Avery's motion for summary judgment on copyright invalidity (Counts I and II).

Counts I and II of Plaintiff's complaint allege that Plaintiff has a valid registered copyright in the instructional text ("Text A") and that Defendants infringed Plaintiff's copyright by printing (Avery) and distributing (State Farm) millions of return address and seasonal label sheets that contained the copyrighted instructional text, and by creating a derivative work without Plaintiff's permission. The legal issues for the court to decide are:

1) Is Plaintiff's copyright valid, i.e., is the instructional text copyrightable as a matter of law?
2) Are Defendants' variations of the instructional text copies or substantially similar to Plaintiff's copyrighted text as a matter of law?
3) Is State Farm's variation of Plaintiff's text an unauthorized derivative work?

Defendants' motion for summary judgment contends that Plaintiff does not possess a valid copyright, and alternatively, if the court finds it does, Defendants' challenged works are not substantially similar to the subject work.

## DISCUSSION

### A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most

favorable to the nonmoving party. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). "A dispute over material facts is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Kennedy v. Children's Serv. Soc'y*, 17 F.3d 980, 983 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

## B.    Copyright Infringement Standard

Under § 106 of the Copyright Act, the owner of a copyright for literary material is granted exclusive rights to do and authorize another to do any of the following: (1) reproduce the copyrighted work; (2) prepare derivative works based upon the copyrighted work; (3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. *See* 17 U.S.C. § 106. In order to establish a prima facie claim of copyright infringement, Quadro must prove two things: (1) ownership of a valid copyright; and (2) that the "constituent elements of the work that are original" were copied. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *I.A.E. Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).

The initial legal issue before the court is whether Plaintiff's instructional text is copyrightable. The copyrightability of a work may be decided as a matter of law. *See Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 340 (N.D. Ill. 1997). Plaintiff claims that Text A contains sufficient originality and creativity to be copyrightable. Indeed, the

United States Copyright Office reviewed and approved Plaintiff's registration application for the instructional text as a literary work. Such approval creates a presumption of copyrightablity in Plaintiff's favor and is *prima facie* evidence of the validity of the copyright. *See* 17 U.S.C. § 410 (c); *see also Pickett v. Prince*, 52 F. Supp. 2d 893, 900 (N.D. Ill. 1999); *aff'd*, 207 F.3d 402 (7th Cir. 2000); *Woods v. Bourne Co.*, 60 F.3d 978, 990 (2d Cir. 1995). This presumption of validity means the presumption of originality. *Runstadler Studios, Inc. v. MCM Partnership*, 768 F. Supp. 1292, 1295 (N.D. Ill. 1991). "[H]owever . . . this is simply a rebuttable presumption and . . . 'the burden of proof in the sense of the risk of nonpersuasion . . . remains throughout the trial upon the party whom it was originally cast.'" *Mid America Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (citing 17 U.S.C. § 410(c), *cert. denied*, 516 U.S. 990 (1995).) In other words, Quadro ultimately bears the burden of proving that its copyright is valid. *Id.*

## C.   Copyright Validity

### 1.   Originality

In *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), the Supreme Court addressed the issue of whether the compilation of names, addresses, and telephone numbers in a white pages, telephone directory was copyrightable. In rendering its decision that the white pages telephone directory did not meet the minimum threshold requirement of originality, the Court set forth general standards for copyright protection:

> [t]he sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the

author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. . . . To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. . . . Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist*, 499 U.S. at 345. The Court considered the selection, coordination, and arrangement of the defendant's white pages, elements that the Copyright Act specifically lists as copyrightable. The Court found nothing original about selecting the names, addresses, and phone numbers of subscribers listed in the phone book. Similarly, the Court found no originality in the arrangement and coordination of the phone book and noted that "there is nothing remotely creative about arranging names alphabetically in a white pages directory." *Id.* at 363. Thus, because the arrangement and selection of information included in the directory lacked creativity, the Court held that the directory did not meet the minimum standards of originality necessary for copyright protection. *Id.* at 363-64.

The Seventh Circuit's interpretation of this issue is presented in *American Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F. 3d 977, 979 (7th Cir. 1997). In this case, the ADA sued Delta Dental for copyright infringement, alleging that Delta had copied its taxonomy of dental procedures. The ADA's taxonomy consisted of classifying dental procedures into groups, and assigning a code number to the procedure together with a description of the services. The district court held that the taxonomies contained only "useful" information that, if removed, left the work "devoid of even that modicum of creativity required for protection, and hence is uncopyrightable." *American Dental Ass'n v. Delta Dental Plans Ass'n*,

10

39 U.S.P.Q.2d 1714 (N.D. Ill. 1996). The Seventh Circuit reversed, finding that multiple descriptions of the procedures catalogued, and a variety of methods for organizing the underlying field of knowledge. Noting that "[c]lassification is a creative endeavor," the court held that the plaintiff's work contained at least the minimum required creativity to by copyrightable. *American Dental*, 126 F.3d at 979-80.

Here, similar to the minimally creative and original taxonomy charts in *American Dental*, multiple versions of the simple instruction and salutation contained in Plaintiff's Text A are possible. In other words, in seeking to provide its customers with easy access to its agents, another insurance agency could have authored a greeting and instruction for its customers in a manner substantially different from the way Quadro chose to draft the expression. As "crude, humble or obvious" the greeting appears, it nevertheless "possess[ed] some creative spark" sufficient to satisfy the minimum requirement of originality and creativity. *See Feist*, 499 U.S. at 345.

## 2.    Merger Doctrine

Defendants argue that even if Text A is creative enough under *American Dental* to allow the court to enforce its copyright, the "merger doctrine" prohibits Plaintiff from claiming a copyright in the instructional text. Stemming from the principle that copyright law only protects an expression of an idea rather than the idea itself, *see* 17 U.S.C. § 102(b); *Atari, Inc. v. North Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 615 (7th Cir. 1982) (the "protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself."), the merger doctrine "holds that if an idea is inextricably

11

linked to a particular expression, the expression 'merges' with the idea and is thus not protected by copyright." *Tensor Group, Inc. v. Global Web Sys., Inc.*, 96 C 4606, 1998 WL 887081, at *1 (N.D. Ill. Dec. 11, 1998). The rationale for the merger doctrine is to prevent the monopolization of an idea that is inseparably tied to a particular expression through copyrighting the expression. 4 MELVILLE B. NIMMER ET AL., NIMMER ON COPYRIGHT, 13.03 [b][3] at 13-67.

Although there is no Seventh Circuit precedent on the merger doctrine in copyright law, the doctrine is well established in other circuits. *See, e.g., Allen v. Academic Games League of Amer., Inc.*, 89 F.3d 614, 618 (9th Cir. 1996) (applying the merger doctrine to deny protection of plaintiff's "expression of the rules of his game manuals"; plaintiff did not distinguish his particular expression "from the idea of the rules themselves"); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138-41 (5th Cir. 1992) (merger doctrine not applicable where idea embodied in maps were capable of a variety of expressions); *Kregos v. Associated Press*, 937 F.2d 700, 705-07 (2d Cir. 1991) (merger doctrine did not apply to preclude copyright protection when there was a sufficient number of ways of expressing idea of rating pitchers' performances); *Morrissey v. Proctor & Gamble Co.*, 379 F.2d 675, 678-79 (1st Cir. 1967) (applying merger doctrine to rules of a contest because most subsequent expressions of an idea of the rules would likely be similar to plaintiff's particular expression). Plaintiff Quadro does not dispute the validity of the doctrine.

In support of their argument, Defendants cite several cases where functional directions, instructions, and rules were found to be expressive material which cannot be separated from

their underlying idea. *See, e.g., Publications Int'l, Ltd v. Meredith Corp.*, 88 F.3d 473 (7th Cir.

1996) (recipes); *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188-89

(2d Cir. 1975) (rules for table-top soccer game); *Continental Micro, Inc. v. HPC, Inc.*, 95 C

3829, 1997 WL 102541 (N.D. Ill. Mar. 5, 1997) (machine instructions); *Project Dev. Group,*

*Inc. v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1354 (W.D.Pa. 1991) (operating procedures);

*Allen*, 89 F.3d at 617 (games instructions). A purview of these cases reveals that in each case

the "idea" at issue could only be expressed in limited ways. For example, in *Morrissey v.*

*Proctor & Gamble*, 379 F.2d 675 (1st Cir. 1967), the plaintiff owned the copyright in a set of

rules for a promotional sweepstakes contest. The plaintiff accused the defendant of infringing

its copyright on the sweepstakes rules. Despite finding "almost precise similarity" between

the plaintiff's and defendant's rules, the First Circuit Court of Appeals affirmed the district

court's ruling in favor of the defendant, holding that enforcing copyright protection to

plaintiff's version of the sweepstakes rules would lead to impermissible ownership of the

game itself. The court reasoned:

> When the uncopyrightable subject matter is very narrow, so that the 'topic
> necessarily requires' [citation omitted], if not only one form of expression, at
> best only a limited number, to permit copyrighting would mean that a party
> or parties by copyrighting a mere handful of forms, could exhaust all
> possibilities of future use of the substance.

*Morrissey*, 379 F.2d at 678-79 (1st Cir. 1967). Similarly, in *Publications Int'l*, 88 F.3d at 480,

the Seventh Circuit[6] held the recipes contained in a cookbook were not copyrightable because

---

[6] The court notes that although the Seventh Circuit has not explicitly adopted
(continued...)

13

in writing down the ingredients necessary to prepare a particular dish, the author was merely writing down an idea. In other words, the author "was not giving literary expression to his individual labors," but instead providing a functional listing of ingredients. *See id.*

The court's task in applying the merger doctrine is to determine whether the "idea" behind the expression is inseparable from its expression. If the court can distinguish the idea from the expression, the expression will be protected. *See Mason*, 967 F.2d at 139. In order to make this determination, the court must first identify the idea that the copyrighted work expresses, and then determine whether the idea can be expressed in a variety of ways. *See id.* at 138. ("To determine whether the [merger] doctrine is applicable in any case, the court must 'focus on whether the idea is capable of various modes of expression.'"); 4 NIMMER, § 13.03[B][3], at 13-70.

As noted earlier the instructions in Text A read,

> Use the above address labels with my compliments! Place one of my business cards on your phone book cover for easy reference. Put the other on your car insurance document in your glove box for ready reference in case of an emergency.

State Farm identifies the idea behind this expression as "a functional reference to help customers reach their insurance agents in time of need." (State Farm Opp'n, at 2.) State Farm further describes the idea of the text as "a few words of salutation and instruction." (*Id.* at 3.) The court agrees that the idea is certainly no more narrow than what State Farm

---

[6](...continued)
the "merger doctrine" in name, it does recognize the principle embodied in the doctrine when it engages in an analysis of the idea/expression dichotomy, as it does in this case.

proposes. Nevertheless, the court is somewhat troubled by State Farm's characterization of the idea as functional. Obviously, the idea is functional in the sense that if the customer follows the instructions provided, some result will follow. The instructions here are distinguishable, however, from the instructions at issue in *Morrissey* and *Publications Int'l* which necessarily resulted in one particular thing -- e.g., the substance of a game or a particular culinary creation. Instead, the instructions here are more in the nature of a friendly "nudge" to the customer, advice that may result in a convenience. It may be equally convenient, however, for the customer to place the phone numbers on the dash board rather than on registration documents, or on a personal calendar or on a card inside a wallet rather than on a phone book. In other words, the idea, or the "easy access in time of need advice" as expressed by Quadro is not the only means to the end. As such, the idea and Quadro's expression are sufficiently separable.

As advice rather than purely functional instructions set out to achieve specific results, the idea is capable of being expressed in a number of ways. Indeed, this is Quadro's argument. In support, Quadro lists eight alternative ways of expressing for the idea embodied in Text A, including the following alternatives:

> I appreciate your business and as a token of my appreciation I am sending you this sheet of personalized labels. My business card labels are for your insurance documents and phone books. The personalized labels are for your use.

> Dear Customer: Here are some free return address labels compliments of State Farm and your friendly State Farm agent. Use the business card stickers to keep my phone numbers in your car and at home. You are in good hands--mine.

> I'm providing you with the sheet of personalized labels. The two business card labels with my business address and fax/phone numbers should be placed on your insurance documents and phone books so that you can get in touch with me quickly. Your personalized labels are for your personal use. I appreciate having the opportunity to service your insurance needs!

(Ex. 18, Plaintiff's Reply in Support of Its Motion for Summary Judgment.) Although the above examples bear a strong resemblance to Text A, the court concludes that Quadro's proposed alternatives are sufficiently different from Text A as to require the court to enforce Quadro's copyright in the expression. The court notes that the question presented here is an extremely close one, and the fact that the United States Copyright Office has registered Quadro's instructional text provides the instant conclusion with an added edge.

## D. Copyright Infringement

After concluding that Quadro possess a valid copyright in Text A, the court must determine whether Defendants infringed that copyright with the use of Text A-1 and Text A-2. With respect to Text A-1 the seasonal labels, it is undisputed that Avery did not print any text on the seasonal labels. Rather, the instructional language and artwork were printed by State Farm's vendor, Reign, in combination with Impressions Unlimited. Avery merely shipped blank label forms according to directions supplied by Reign for this label product. Those directions instructed Avery to ship the blank labels to an independent printing operation, which in turn reproduced the allegedly infringing language onto the blank labels. Inasmuch as Avery had no part in copying, reproducing, or distributing the allegedly infringing Text A-1 printed on the seasonal label sheets, the court grants summary judgment in favor of Avery with respect to any liability for copyright infringement involving the

seasonal label sheets. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 (7th Cir. 1995) (affirming summary judgment for defendant because plaintiff could not present sufficient evidence to permit a jury to conclude that defendant engaged in infringing conduct).

## 1.   Substantial Similarity

If an allegedly infringing work is not an identical copy, only copying that is substantially similar to protectable elements can support an infringement action. *Feist*, 499 U.S. at 364; *see also Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614-616 (7th Cir. 1982) (only copying of protected elements will satisfy showing of substantial similarity).

As discussed *supra*, copyright protection extends only to the particular expression of an idea and never to the idea itself. As the court explained in *The Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 793 (N.D. Ill. 1998): "It must be remembered that there is an important, but subtle, difference between using someone else's good marketing concepts (the ideas) and stealing their original work (the expression of the ideas)." For this reason, "[t]he fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity." *National Presto Indus. Inc. v. Hamilton Beach, Inc.*, No. 88 C 10567, 1990 WL 51663, * 3 (N.D. Ill. Apr. 16, 1990) (granting partial summary judgment for defendant on alleged copyright infringement of plaintiff's instruction manual because both works "make factual statements not easily expressed in substantially dissimilar ways"). The scope of protectability is sometimes

described as operating on a "spectrum of protection" with more protection granted where the expression of idea is more creative and unique. *See Atari*, 672 F.2d at 617 ("As a work embodies more in the way of particularized expression it . . . receives broader copyright protection . . . . [T]he scope of copyright protection increases with the extent expression differs from the idea.") (internal citations omitted).

At the other end of the spectrum, "where idea and expression are indistinguishable, the copyright will protect against only against identical copying." *Atari*, 672 F.2d at 616; *see also Pampered Chef*, 12 F. Supp. 2d at 793 ("copyright infringement could only lie if the photographs complained of were *almost* perfectly identical to those in its own catalog, and we find that none of the photographs complained of meets this level of scrutiny"); 4 MELVILLE B. NIMMER ET AL, NIMMER ON COPYRIGHT § 13.03 [A] at 13-28 (1991) (where the work involves less creative effort, the level of protection is "thin," and substantial similarity is present only where the work is identically copied). For example, functional instructions, games and rules are subject to a very low level of copyright protection, because their protectable expression is often impossible to separate from the underlying idea.

Defendants urge that the expression of Text A is so close to the text's essential idea that it merits less protection and only *exact* copying of the text will satisfy the "substantial similarity" element of Plaintiff's claim. (Avery's Opp. to Pl.'s Mot. for Summ.J., at 8.) An example from *Pampered Chef* case is instructive.

In *Pampered Chef*, a cookware retailer alleged that its competitor, Magic Kitchen, infringed its copyright in its kitchenware catalogs. The court granted summary judgment in

18

favor of Magic Kitchen holding that the two catalogs were not substantially similar. The court offered the following explanation:

> Pampered Chef claims that the 1995 Magic Kitchen Catalog covers violates its copyright on the 1992 Pampered Chef Catalog. Both have a strawberry dessert on the front and a whipping cream press that was used to decorate the cake. The dessert on the Magic Kitchen's catalog is not identical to Pampered Chef's, however, and it does not have the eggs, wire whisk and pump tips present in the Pampered Chef [catalog]. Obviously, Pampered Chef cannot copyright the concept of strawberry desserts on catalog covers, or even the combination of those various products. What it can copyright is that particular photograph of the products. Magic Kitchen's photographs has some similar and some different elements, but cannot be said to be an "almost verbatim" representation of Pampered Chef's cover. The marketing concepts are similar; the images, however, are hardly identical. Accordingly, Magic Kitchen's cover does not violate Pampered Chef's copyright.

*Pampered Chef*, 12 F. Supp. 2d at 793.

In the instant case, given the minimal creativity and originality reflected in Text A, and the close relationship between the idea behind Text A and the expression itself, the court will apply the same standard which was applied in *Pampered Chef*: almost verbatim reproduction. *Pampered Chef*, 12 F. Supp. 2d at 792-93. Under these circumstances, a virtual reproduction of Text A is required before copyright infringement may be found. The court has prepared the following redline comparisons[7]:

<u>Text A-1 (seasonal labels) compared with Text A</u>

Use the above address labels with my compliments! Place one of my business cards on your phone book ~~cover~~ for easy reference. Put the other on your car insurance document in your glove box for ready reference in case of ~~an~~

---

[7]    A word deleted from the original appears as strike-through and new material is underlined.

emergency.

<u>Text A-2 compared with Text A</u>

~~Use the above~~ I hope you find these return address labels <u>useful.  Please accept</u>
<u>them</u> with my compliments~~!~~.  Place one of my business ~~cards~~ <u>card labels</u> on
your phone book ~~cover~~ for <u>quick and</u> easy reference.  ~~Put~~ <u>Place</u> the other on
your ~~car~~ insurance ~~document~~ <u>documents or folder</u> ~~in your glove box for ready~~
~~reference in case of an emergency~~.

With respect to Text A-1[8], the differences are negligible.  The only difference between
Text A-1 and Text A is the omission of two words, namely, "cover" and "an."  Given the
substantial similarity between Text A-1 and Text A, the court concludes that Defendant State
Farm has infringed Plaintiff's copyright on Text A with its use of Text A-1.

With respect to Text A-2, the creative expression embodied in the two sets of
instructions are palpably different.  Applying the "almost verbatim" standard used in
*Pampered Chef,* the court finds that the difference between the two works are significant
enough to preclude a finding of "substantial similarity."  Moreover, the only section of any
length which appears to be replicated in the language of Text A-2 is "place one of my business
cards . . .on your phone book," a purely functional phrase which is excluded from protection
under 17 U.S.C. 102(b).  *Publications Int'l Ltd v. Meredith Corp.,* 88 F.3d 473 (7th Cir. 1996);
17 U.S.C. 102(b) (Functional procedures and methods for accomplishing a task are not
copyrightable subject matter:  "In no case does copyright protection for an original work

---

[8]      The court has already ruled that Avery is not liable with respect to Text A-1
in that it did not participate in the printing, reproducing or distributing of the Text A-1. *See*
*supra* at 16.

extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery.")

## E. Derivative Work

Plaintiff argues that "[a]ssuming . . . that this Court cannot determine that Text A-2 is substantially similar to Text A as a matter of law, plaintiff asserts, in the alternative, that State Farm's Text A-2 is an unauthorized derivative work based on plaintiff's Text A." (Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment Against Defendants on Liability as to Counts I and II of Plaintiff's Complaint, at 8.) Under § 101 of the Copyright Act, a derivative work is " a work based upon . . . pre-existing works . . . . A work consisting of editorial revisions . . . or other modifications which . . . represent an original work of authorship." 17 U.S.C. § 101. Here, as with the court's analysis above, substantial similarity is a requirement in determining whether something is a derivative work. Plaintiff's presumption that a work not substantially similar to the copyrighted work can still be considered a derivative work misses the mark. *Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 341 (N.D. Ill. 1997)("in order to prevail on a copyright infringement claim for a derivative work, the plaintiff must . . .establish substantial similarity between the protected and accused works . . . ); *Runstadler Studios, Inc. v. MCM Ltd. Partnership*, 768 F. Supp. 1292, 1296 (N.D. Ill. 1991) ("the concept of substantial similarities is central to [the] determination"). As Professor Nimmer explains:

> It should be noted, however, that the term derivative work in a technical sense does not refer to all works that borrow in any degree from pre-existing works. A work is not derivative unless it has *substantially* copied from a prior work.

If that which is borrowed consists merely of ideas and not of the expression of ideas, then although the work may have in part been derived from prior works, it is not a derivative work.

1 MELVILLE B. NIMMER ET AL., NIMMER ON COPYRIGHT § 2.01 at 3-3 (1991) (emphasis in the original). Inasmuch as Text A-2 lack the requisite similarity to be considered a derivative work of Text A, Plaintiff's derivative work claim must fail.

## CONCLUSION

For the reasons set forth here, the court concludes that Plaintiff has a valid copyright. The court concludes, further, that Defendant Avery did not infringe Plaintiff's copyright with respect to either Text A-1 or Text A-2 (Count I). Finally, Defendant State Farm infringed Plaintiff's copyright in its use of Text A-1 but did not infringe in its use of Text A-2 (Count II), as Text A-2 does not infringe and does not constitute a derivative work. Defendants' motion for summary judgment (Doc. 144-1) is granted with respect to Count I against Avery and granted in part and denied in part with respect to Count II against State Farm. Plaintiff's motion for summary judgment (Doc. 135-1) is denied as against Avery and denied in part and granted in part as against State Farm.

ENTER:

Dated: August 7, 2000

REBECCA R. PALLMEYER
United States District Judge

(quadct12)

22